UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LARRY MELTON, M.D.  PLAINTIFF

v.  CIVIL ACTION NO. 3:04-CV-183-S

PHYSICIANS IN EMERGENCY
MEDICINE, P.S.C.  DEFENDANT

and

JEWISH HOSPITAL HEALTHCARE
SERVICES, INC.  THIRD-PARTY DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on cross motions by the plaintiff, Larry Melton ("Dr. Melton"), and by the defendant, Physicians in Emergency Medicine, P.S.C. ("PIEM"), for summary judgment.[1] This case involves a contractual dispute between Dr. Melton and his former employer, PIEM, regarding disability insurance coverage. Dr. Melton's alternative claim raises issues involving the Employee Retirement Income Security Act of 1974 ("ERISA"). For the reasons set forth below, this case will be remanded to the Jefferson Circuit Court**.**

FACTS

Dr. Melton joined PIEM, whose physicians staff Jewish Hospital's emergency room ("ER"), in 1992. In February of that year, he entered into an employment contract with PIEM, which included specific provisions regarding disability insurance coverage. The contract stated in pertinent

---

[1] The parties have agreed that the court will reserve ruling on the motion for summary judgment made by the third-party defendant, Jewish Hospital Healthcare Services, Inc. ("Jewish Hospital"), until other dispositive motions have been filed and considered. *See Jewish Hospital's Reply to Dr. Melton's Response to Jewish Hospital's Motion for Summary Judgment* (DN 35).

part:

> Disability insurance shall be provided by [PIEM] through Northwestern Mutual Life in an amount purchasable to the fullest extent allowable by law. The disability policy shall be occupation specific. The disability policy shall have a waiting period of not more than sixty (60) days. Ownership of the disability policy shall remain with [Dr. Melton] should this agreement terminate. At that time, premiums will be paid by [Dr. Melton].

*Melton's Employment Agreement*, ¶3. Dr. Melton claims that PIEM breached this agreement by failing to purchase the maximum allowable coverage and by purchasing a group long term disability plan that was not occupation specific and did not have a 60 day waiting period.

Dr. Melton acquired several disability policies. Prior to joining PIEM, he purchased policies in 1986 and 1988, both from Northwestern Mutual Life ("NML"). After joining PIEM in 1992, Dr. Melton acquired new disability coverage as an additional purchase benefit to his already existing policies and PIEM began paying his entire premium. Dr. Melton selected another disability policy in 1994, for which PIEM also assumed payment. These new policies were occupation specific.

In 1996, one of the other physicians at PIEM became disabled and the benefits he received were taxed. Therefore, PIEM increased all physicians' monthly salary by $1,000, instructing them to pay their own premiums. While the income was taxable, any disability benefit would not be taxed if a physician became disabled. Dr. Melton began personally paying his premiums with this increase.

From 1996 through 1998, Dr. Melton became disabled twice and was unable to work at PIEM. While Dr. Melton was on disability leave, PIEM selected and purchased a supplemental group disability policy. One of the physicians had an allergy to latex which prevented her from obtaining disability coverage. When PIEM learned that this physician could acquire coverage under a group plan, it decided to purchase one. Dr. Melton was included in this plan, which was only occupation specific for the first two years and which had a 90 day waiting period.

Dr. Melton worked in the ER until February of 2002, when he again became disabled. He remained with PIEM working in Jewish Hospital's urgent care hand center until his termination in 2004. After his 2002 disability, Dr. Melton began receiving the maximum available benefits under terms of his individual policies as well as the 1998 group policy.

Dr. Melton has sued PIEM for breach of his employment contract, alleging that PIEM did not provide the maximum coverage possible and also purchased a group policy that did not comport with the terms of his individual contract. In the alternative, he pleads that PIEM has failed to provide ERISA benefits to which he is entitled. PIEM has filed counterclaims against Dr. Melton, alleging that he breached his fiduciary duty by disclosing his salary to Jewish Hospital and that he breached his employment contract and a subsequent oral agreement by retaining overpayments of his salary and refusing to repay loans from PIEM.

## DISCUSSION

Dr. Melton initially filed suit in Jefferson Circuit Court. His complaint contains two counts. First, he alleges injury resulting from PIEM's breach of his employment contract. In the alternative, he pleads that PIEM failed to provide ERISA benefits. PIEM removed the action to this court arguing that the ERISA claim presents a federal question under 28 U.S.C. §1331, which vests jurisdiction of such matters in this court. However, the parties focus primarily on the contract claim.[2] Before the court can proceed on the substantive claims, the threshold issue of subject matter jurisdiction must be addressed. *See Insurance Corp. of Ireland, Ltd.*, 456 U.S. 697, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("Subject-matter jurisdiction . . . functions as a restriction on federal

---

[2] The court notes that while the amount in controversy of these claims is sufficient to meet the requirements of jurisdiction under 28 U.S.C. §1332, the parties are not diverse.

3

power, and . . . no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant."). A federal court may always raise the issue of subject matter jurisdiction.[3] *See Grupo Datafluz v. Altas Global Group, L.P.*, 541 U.S. 567, 593, 124 S.Ct. 1920, 158 L.Ed.2d. 866 (2004). In fact, the court is directed: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §1447(c).

### *A. Dr. Melton's employment contract with PIEM is not an ERISA "plan."*

Dr. Melton maintains that his breach of contract claims "are enforceable under ERISA because the claims arise under an employment contract under which [PIEM] agreed to provide an employee benefit – disability insurance." *Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment* (DN 46/47), p. 13.[4] The court disagrees. ERISA applies to claims under "employee welfare benefit plans." *See* 29 U.S.C. §1002. Dr. Melton's 1992 employment contract does not constitute "an employee welfare benefit plan" within the meaning of ERISA.

To support his assertion, Dr. Melton cites *Ruble v. Unum Life Ins. Co. of America*, 913 F.2d 295 (6th Cir. 1990). In *Ruble,* the plaintiff claimed his employer breached the company's group disability insurance policy. It was that *insurance contract* that qualified as an employee welfare

---

[3] When initially reviewing the motions at bar, the court realized that its jurisdiction may be infirm. Therefore, the court allowed the parties to supplement their briefs on the issue of subject matter jurisdiction and has taken those arguments into consideration as well. *See Order* (DN 58).

[4] *See also Plaintiff's Supplemental Memorandum* (DN 59), p.3-4.

4

benefit plan.[5] Dr. Melton's *employment contract* is fundamentally different from an ERISA-qualifying insurance contract. ERISA explicitly defines the term "employee welfare benefit plan" as

> any plan, fund, or program which has heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . .

29 U.S.C. §1002(1)(A). Dr. Melton's employment contract is neither a plan, a fund nor a program. His contract was not established with its primary purpose being to provide him with benefits. The employment contract memorialized his affiliation with PIEM and established the terms and conditions of his association. *See Melton Employment Agreement*, p.1. While it mentioned his entitlement to certain disability coverage, it did not establish a particular benefit plan. The provision in the employment contract wholly lacks the necessary specification and detail required of a qualifying ERISA employee welfare benefit plan.

Other courts have used the following guidelines to resolve the threshold question of whether a contract falls within the purview of ERISA: "a 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing and procedures for receiving benefits." *Williams v. Wright*, 927 F.2d 1540, 1543 (11th Cir. 1991) (quoting *Donovan v. Dillingham,* 688 F.2d

---

[5] The plaintiff in *Ruble* alleged "a breach of a group disability insurance contract." The court further determined that "[t]he insurance policy . . . constitutes an employee welfare benefit plan" under ERISA. *See Ruble*, 913 F.2d at 295.

5

1367, 1373 (11th Cir. 1982) (*en banc*)).[6] While it is difficult to apply this test to an employment contract, which is inherently different than a typical ERISA plan, the court finds that the surrounding circumstances of Dr. Melton's employment contract simply do not allow a reasonable person to ascertain *all* of these elements.

First, the intended benefits are identified as disability coverage. Second, the 11th Circuit Court of Appeals has somewhat reluctantly[7] determined that ERISA does not exclude plans covering a single individual. *Id.* at 1546. Assuming this is correct, the class of beneficiaries is ascertainable as the contract applies only to Dr. Melton. Nonetheless, the remaining two elements are not readily ascertainable. The source of financing is not adequately identified by the contract. With some exceptions, assets of employee benefits plans are required to be held in trust. *See* 29 U.S.C. 1103.[8] There is no indication that PIEM set up such a trust. Dr. Melton's contract merely stated that PIEM would "provide" coverage without identifying how that coverage would be provided. The contract leaves open questions regarding how the plan would be selected and how it would be funded. For instance, it remains unclear whether PIEM was to pay premiums directly or reimburse Dr. Melton.

---

[6] The *Williams* court found that a letter from the defendant employer to the plaintiff employee, regarding the possibility and terms of the employee's retirement, met the requirements of this test. It reasoned that the "letter's arrangement primarily constituted payment of retirement income and was not an employment contract outside the scope of ERISA." *Williams*, 927 F.2d at 1547. The case at bar is distinguishable because Dr. Melton's 1992 agreement was, without question, an employment contract - not an arrangement primarily constituting a disability plan.

[7] The court referred to this question as "more troublesome" than the other issues in the case, but nonetheless found support for its conclusion in Department of Labor regulations and opinion letters. *Williams*, 927 F.2d at 1545.

[8] The *Williams* court ruled that paying benefits from a company's general fund, alone, was insufficient to disqualify an otherwise applicable ERISA plan; however, Dr. Melton's contract is deficient in other respects as noted throughout this section of the court's opinion.

The amount of benefits to be paid by PIEM also remains unclear. The language "in an amount purchasable to the fullest extent allowable by law" makes it difficult to ascertain how much coverage Dr. Melton should have at any given time.[9]

Lastly, and perhaps most importantly, the contract completely fails to identify procedures for receiving the benefits. Dr. Melton's individual employment contract simply lacks the administrative program or procedures characteristic of ERISA plans. For instance, the employment contract did not detail when the elimination period would begin, how and when the benefits would be paid, how and when an employee must make a disability claim, the procedures to follow for appeal, or any other procedures typical of ERISA plans.[10]

Applying the same analysis, another district court determined that an employer's written promise to pay the plaintiff employee salary and benefits for one year after his resignation did not constitute an employee welfare benefit plan under ERISA. *See Moffitt v. Whittle Communications*, 895 F.Supp. 961, 971 (E.D.Tenn 1995). In *Moffitt*, the court determined that the correspondence between the employer and employee lacked sufficient detail and specificity under *Donovan*.[11] Likewise, the contractual provision stating that PIEM agreed to provide disability coverage to Dr.

---

[9] Compare, for instance, the language in the letter at issue in *Williams*: "We will also . . . pay all premiums for yourself and [your spouse] on the company's group medical insurance plan, and the maximum available term life insurance available through the plan for your age group." *Williams*, at 927 F.2d at 1542. This language mentions a pre-existing plan, thus making the maximum amount readily ascertainable by referencing the terms of the plan itself.

[10] *See, e.g., Moffitt v. Whittle Communications*, 895 F.Supp. 961 (E.D.Tenn 1995) (explaining the summary plan description of the ERISA-qualifying long term disability plan).

[11] In *Donovan*, the employer subscribed to a multiple-employer insurance trust to provide its employees with health insurance. The court found this equivalent to establishing or maintaining an employee welfare benefit plan under ERISA, determining that the surrounding circumstances allowed a reasonable person to ascertain the requisite elements. *Donovan*, 688 F.2d at 1374.

7

Melton is simply not, in itself, an employee welfare benefit plan. *See Donovan*, 688 F.2d at 1337. ("A decision to extend benefits is not the establishment of a plan or program."). Furthermore, the court in *Williams* determined that agreements "generally involv[ing] the promise of post-retirement payments offered only incidentally to a present individual employment agreement" were not covered by ERISA.[12] *Williams*, 927 F.2d at 1546. Similarly, Dr. Melton's individual employment agreement merely offered disability coverage as an incident of his association with PIEM.[13]

Nonetheless, Dr. Melton cites *Moffitt* for the proposition that his breach of contract claims are governed by federal common law under ERISA. *Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment* (DN 46/47), p. 13, n. 3. While the *Moffitt* court rejected the plaintiff's contention that the letters constituted an employee welfare benefit plan, it determined that his state law contract claims were preempted by ERISA because they related to an employee benefit plan. *Id.* at 972. (citing *Gordon v. Barnes Pumps, Inc.*, 999 F.2d 133, 137 (6th Cir. 1993)). Relying on this principle, the *Moffitt* court found that "because the subject matter of the agreement [between the employer and the plaintiff employee] clearly had reference to a preexisting ERISA plan or plans . . .," it sufficiently related to an employee benefit plan. *Id.* Dr. Melton's contract made no reference to any preexisting ERISA plan, as none existed at the time.

---

[12] Conversely, "arrangement[s] . . . designed primarily for the purpose of providing retirement income" or disability benefits would be covered by ERISA. *See Williams*, 927 F.2d at 1547.

[13] The contract indicated that the provisions contained in the agreement were "in consideration of the mutual promises and agreements contained herein." *Melton Employment Agreement*, p. 1. Dr. Melton's contract was a standard employment agreement, whereas the trust at issue in *Donovan,* for example*,* clearly stated that its purpose was "to provide, through policies issued by insurers, life, accident-and-health, sickness-and-health, disability-income, [etc.]." *Donovan*, 688 F.2d at 1374.

Dr. Melton also relies upon *Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir.1991) to establish an ERISA claim. In *Armistead,* the plaintiffs sued their former employer for denial of retiree health and life insurance benefits. The plaintiffs, who were represented by a union, asserted claims for violation of their collective bargaining agreement (CBA)[14] and denial of benefits under ERISA. The court ruled in favor of the plaintiffs on both counts, stating that "[h]aving concluded that [defendant employer] had no right to terminate plaintiffs' insurance benefits under the CBA, we must also conclude that it had no right to terminate them when we consider the terms of the CBA as a benefits plan under ERISA." *Id.* at 1298. The court held that a breach of the CBA constituted an ERISA violation, reasoning that since it was "the intention of the parties to confer on retirees vested rights in medical insurance benefits under a CBA, it is also their intention to confer the same rights under the 'welfare benefit plan' protected by ERISA." *Id.*

The *Armistead* situation is distinct from the one at bar. The court has previously noted that the primary intention of Dr. Melton's employment contract was not to confer disability benefits. On the contrary, one of the express purposes of the CBA negotiated by the union in *Armistead* was to provide benefits to the plaintiff employees. *Id. at* 1290-92. The CBA also referenced a preexisting benefits plan and specifically incorporated the details laid out in the booklet establishing the terms of that plan. *Id.* at 1290-91. When the CBA was later changed, a new plan booklet was issued. *Id.* at 1292. No specific plan was established pursuant to the terms of Dr. Melton's employment contract.[15] Furthermore, the *Armistead* plaintiffs were denied benefits under an

---

[14] Therefore, the federal court had an independent basis for jurisdiction under the Labor Management Relations Act (LMRA).

[15] On the contrary, in *Armistead*, "[t]he medical insurance plan *agreed to in the CBA* is a welfare benefits under ERISA." *Id.* at 1298 (emphasis added).

9

insurance policy. *Id*. at 1293. Dr. Melton points to no such denial because he is receiving the maximum amount available under his existing plans.[16]

PIEM relies upon *Bhandari v. Unison Behavioral Health Group, Inc*., 338 F.Supp.2d 818 (W.D. Ohio 2004), noting that another district court found that an employment contract qualified as an ERISA plan. In *Bhandari,* the plaintiff psychiatrist signed an employment contract with the defendant health care facility. When he was subsequently demoted, he sued his employer for breach of contract, asserting that the breach caused him to lose employee benefits set forth in the agreement." *PIEM's Supplemental Brief* (DN 60), p. 7. In this case, Dr. Melton's termination did not cause him to *lose* benefits under any of his plans. He continues to receive the maximum amount possible under the terms of each policy. He claims only that PIEM secured the wrong type of coverage, not that he was denied benefits under any existing plan. Furthermore, the *Bhandari* court concluded that the plaintiff's employment agreement qualified as a plan under 29 U.S.C. §1002 because it "states the intended benefit, the beneficiary, and how most of the benefits are financed. Further, a reasonable person could readily ascertain how to obtain benefits."[17] *Bhandari,* 338 F.Supp.2d at 822. In contrast, Dr. Melton's employment contract fails to identify procedures for receiving the benefits.

**B. Dr. Melton does not seek to enforce an ERISA agreement or assert rights to future benefits under and ERISA plan.**

PIEM notes that, as the removing party, it bears the burden of establishing that Dr. Melton's

---

[16] *See Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment* (DN 46/47), Exhibits 3, 4.

[17] The *Bhandari* court did not cite the relevant contract language it used to make this determination.

claims are preempted by ERISA. PIEM then suggests that Dr. Melton's individual policies or the 1998 Group Policy constitute a ERISA plan. *See PIEM's Supplemental Brief* (DN 60), p. 4. The court agrees that Dr. Melton's individual policies as well as the 1998 Group Policy are all employee welfare benefit plans under ERISA. Those insurance policies contain the details necessary to allow a reasonable person to ascertain the intended benefits, class of beneficiaries, source of financing and procedures for receiving benefits under *Donovan*.

PIEM also correctly states that this court must determine whether Dr. Melton "seeks to enforce an ERISA agreement or assert rights to future benefits under an ERISA plan." *See id.* (citing *Wright v. General Motors Corp.*, 262 F.3d 610, 613-14 (6th Cir. 2001)). However, Dr. Melton is not seeking to enforce any of his individual policies or the 1998 group policy nor is he asserting rights to future benefits under them. In the instant case, he seeks to enforce his *employment contract*. Dr. Melton does not assert that PIEM breached any term of his disability policies. In fact, his claims were all approved.[18] This critical fact distinguishes the case at bar from those relied upon by the parties.[19] Dr. Melton certainly cannot allege a denial of ERISA benefits under any existing plan[20] because he is receiving the maximum amount possible under the terms of each of his policies. In fact, he merely asserts that PIEM violated his employment agreement by securing the wrong type

---

[18] *See Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment* (DN 46/47), Exhibits 3, 4.

[19] *See, e.g., Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir.1991) (employer terminated plaintiffs' life insurance benefits); *Bhandari v. Unison Behavioral Health Group, Inc.*, 338 F.Supp.2d 818 (W.D. Ohio 2004) (plaintiff lost benefits he was receiving prior to his demotion); *Moffitt v. Whittle Communications*, 895 F.Supp. 961 (E.D.Tenn 1995) (former employee's claim for long term disability benefits under an employer-provided plan was denied).

[20] Dr. Melton maintains that he brings his ERISA claim under 29 U.S.C. 1132(a)(1)(B) which allows a plaintiff to "recover benefits due to him under the terms of the plan."

11

of coverage in the wrong amount with the wrong waiting period when it purchased the group policy and by failing to obtain additional coverage for him. These claims sound in traditional contract law.

In sum, Dr. Melton alleges that PIEM breached the terms of his employment contract by failing to provide the "correct" coverage. He does not claim that he has been denied benefits to which he was entitled under any identifiable employee welfare benefit plan and, thus, his claims do not fall within the ambit of ERISA. Consequently, this court is without jurisdiction to entertain these state law contract claims between two non-diverse parties. Accordingly, removal was improper and this court will remand the case to the Jefferson Circuit Court.

A separate order will be entered herein this date in accordance with this opinion.

cc: Counsel of Record